**Donald SEARS, Gerald Soupal, et al., Plaintiffs,**

v.

**AUTOMOBILE CARRIERS, INC., a Michigan Corporation, et al., Defendants.**

**No. 76–40132.**

United States District Court, E. D. Michigan, S. D.

Nov. 24, 1981.

---

**1.** "Tr." reference is to pages of the administrative record.

Hiram S. Grossman, Flint, Mich., for plaintiffs.

C. John Holmquist, Jr., R. Ian Hunter, Bloomfield Hills, Mich., James P. Hoffa, Detroit, Mich., David Leo Uelmen, Milwaukee, Wis., Earl Cline, Flint, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

## I FACTS

Defendant employers Automobile Carriers, Inc., Boutell Driveway, Inc., and Complete Auto Transit, Inc. are parties to a collective bargaining agreement called the National Automobile Transporters Agreement. This agreement, as it is involved in the instant case, extended from September 1, 1973 to May 31, 1976.

Early in 1976, defendant employers were notified that the Local would seek a re-negotiated agreement upon termination of the 1973–76 agreement. Negotiations ensued in the spring of 1976, and on May 21, 1976, a tentative agreement was reached.

On June 1, 1976, an unauthorized strike occurred at defendant Complete Auto Transit. This strike was a protest against the negotiating and content of the tentative agreement. During the June 1—June 21 period, similar work stoppages occurred at the locations of the other two defendant employers. On June 16, 1976, it was announced that ratification of the tentative agreement had been defeated by vote of the union members.

On June 25–26, 1976, the defendant employers reacted to the unauthorized strikes.[1A] As a disciplinary measure, the striking employees were discharged. Those discharges were grieved through the recognized grievance procedures. Eventually, a joint arbitration committee upheld the discharges.

Plaintiffs brought the present lawsuit [1B] after the joint arbitration committee had upheld the discharges. In the original complaint, plaintiffs advanced six Counts. Two of these Counts, Counts III and VI, were dismissed by an order entered by Judge Harvey on May 26, 1977. The remaining Counts include *inter alia*: Taft Hartley Act, section 301 claims; and Landrum Griffin Act, section 101(a)(1) and section 102 claims, against the defendant Local 332 and the defendant International, Brotherhood of Teamsters. The remaining Counts also include section 301 claims against defendant employers.

Each of the defendants has moved for summary judgment with respect to the claims against it. Due to the nature of the claims and the legal rules involved, it is possible to decide all of the Summary Judgment Motions in a single opinion.

## II PLAINTIFFS' COUNT I, SECTION 301 CLAIM

Count I of the plaintiffs' complaint alleges that the Local violated section 301 by its conduct during and after the 1976 contract negotiations. Specifically, the plaintiffs contend that the Local failed to present requests for changes in the contract; failed to notify plaintiffs that a tentative agreement had been reached; and failed to discuss or explain changes in the contract language.

■ The analysis of this aspect of the plaintiffs' claim begins with an acknowledgement that alleged union misconduct in negotiating or administering a contract can form the basis of a section 301 claim for breach of duty of the fair representation. This was clearly demonstrated in the Sixth Circuit cases of *Trail v. Teamsters*[2] and *Geddes v. Chrysler*[3]. In *Trail*, the Sixth Circuit held that a class of over-the-road truck drivers stated a section 301 claim where the truck drivers had alleged that the Union had intentionally depressed their wages in contract negotiations. The chief

---

**1A.** The old contract, which had expired on May 31, 1976, was extended until a new agreement was ratified. The old contract was thus in effect during the time of the June 1 through June 21 strikes. This contract contained a no-strike provision. The existence and continuing effect of this provision made the strikes "unauthorized."

**1B.** There has also been litigation brought by the employers seeking relief for alleged damages incurred in the unauthorized work stoppages. *See Complete Auto Transit v. Danny Reis, et al.*, 614 F.2d 1110 (C.A.6, 1980).

**2.** 93 LRRM 3076 (C.A.6, 1976).

**3.** 102 LRRM 2756 (C.A.6, 1976).

issue in *Geddes* was the exhaustion of internal union remedies doctrine. Nevertheless, the Sixth Circuit opinion contained clear indications that improper contract negotiations could give rise to a section 301 claim.[4]

There is, however, a crucial difference between the instant case and the two cases discussed above. Here, the plaintiffs brought their lawsuit in response to the wildcat strike discharges. The relief sought by the plaintiffs stems from the discharges—rather than the contract negotiations.

■ This Court believes that this distinction is decisive. It removes the instant case from the precedential sphere of *Trail* and *Geddes* and brings it much closer to the cases of *Ferndance v. Automobile Transport*[5] and *Schramm v. Complete Auto Transit*[6]. In these two opinions, authored by Judges Freeman and Guy respectively, it was noted that the underlying dispute giving rise to a wildcat strike was not a sufficient basis for relief where the original action had been brought to challenge the section 301 validity of wildcat strike discharges.[7] Similarly, the instant plaintiffs' Count I claims—in effect—request that this Court adjudge the validity of the wildcat strike. This, the Court cannot do—the Court's section 301 inquiry is confined to the validity of the Local's conduct during the processing of plaintiffs' grievances. Therefore, the Court hereby GRANTS the Motion for Summary Judgment as it pertains to plaintiffs' section 301 claims.

## III PLAINTIFFS' LMRDA CLAIMS

In Count I of the Complaint, plaintiffs have also asserted that the defendant Local violated section 101(a)(1) and section 102 of the Labor Management Reporting and Disclosure Act (LMRDA). The plaintiffs allege that the Local failed to provide ballots to many eligible voters during the ratification vote on the May 21, 1976 agreement—an agreement that was opposed by the plaintiffs.

To be emphasized is that the plaintiffs fail to acknowledge a rather important fact. The plaintiffs do not mention that the attempt to ratify the May 21, 1976 agreement was defeated. Since the ratification was unsuccessful, the plaintiffs could not have been harmed by the Local's alleged failure to supply ballots. This follows from the fact that the plaintiffs wanted the ratification to fail.

■ It is well established that the LMRDA is not designed to deal with hypothetical injuries. Courts have not hesitated to dismiss LMRDA claims on the ground of mootness. Indeed, the LMRDA mootness doctrine has been applied to a wide variety of situations[8] including claims based on cancelled disciplinary actions[9] and claims based on inconsequential election improprieties.[10]

■ As it was indicated above, plaintiffs could not have been harmed by the alleged election improprieties. This moots the LMRDA claim, therefore, Summary Judgment is GRANTED with respect to the LMRDA claims.

## IV PLAINTIFFS' REMAINING SECTION 301 CLAIM AGAINST THE UNION

As the foregoing discussion has indicated, the plaintiffs' chances for recovery rest on the section 301 claim as it relates to the employers' failure to provide plaintiffs with written warning notices prior to discharge. In briefly recapitulating this claim, it is noted that Article 40 of the collective bar-

---

**4.** *See e. g. id.* at 2758–59.

**5.** 100 LRRM 2045 (E.D.Mich.1978).

**6.** 101 LRRM 2178 (E.D.Mich.1979).

**7.** *See* 100 LRRM 2045, 2048; 101 LRRM 2178, 2180.

**8.** *See e. g., Larkin v. Department of Labor,* 102 LRRM 2054 (N.D.Ill.1979); *Zembower v. Team-*

*sters,* 98 LRRM 2964 (D.C.Fla.1978); *Collins v. Electric Workers Local 1944* (W.D.Pa.1978).

**9.** *Case v. Electrical Workers Local 1547,* 100 LRRM 2366 (C.A.9, 1978).

**10.** *Local 445 v. IBI,* 87 LRRM 3219 (S.D.N.Y. 1973).

gaining agreement requires that the employer must extend at least one written warning notice to an employee before executing his discharge. There are a number of exceptions to this rule, but none that are applicable in the instant case. It is therefore acknowledged that the employers failed to comply with Article 40 since they failed to extend written warning notices prior to discharging the plaintiffs. It is also acknowledged that the Local did not utilize the employers' failure to extend warning notices as an argument in plaintiffs' behalf at the grievance proceedings. It remains for this Court to determine whether the Local's failure to utilize this argument was enough to violate the Local's duty of fair representation.

■ The point of departure in duty of fair representation analysis is the Supreme Court case of *Vaca v. Sipes*[11]. In *Vaca*, the Court held that the duty of fair representation is violated if and only if a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.[12] It is thus necessary to determine whether the Local's conduct falls into at least one of these three categories.

■ The Court will first consider the bad faith issue. Plaintiffs have argued that the Local's bad faith stemmed from the fact that it had an interest in making certain that the plaintiffs did not emerge victorious from the grievance procedures. According to plaintiffs, this interest was based on the fact that the Local had opposed the striking activity that had led to the discharge of plaintiffs. Although plaintiffs have pointed out this apparent source of bad faith motivation, it nevertheless must be concluded that the file is barren of supported instances of bad faith in the processing of the grievances.

The lack of factual bad faith evidence compels the rejection of the notion that the Local was guilty of bad faith. If anything, an examination of the depositions would indicate that the plaintiffs were satisfied with their representation during grievance proceedings and that the dissatisfaction did not begin until after the plaintiffs learned that their discharges had been upheld.[13]

■ The bad faith motivation argument is unpersuasive in that it is not accompanied by any objective bad faith acts. A reason why one might be suspected of bad faith is not a substitute for same factual evidence of the bad faith. In this respect, note the Fifth Circuit case of *Walters v. Roadway Express*.[14] The *Walters* fact pattern was quite similar to the instant case. A group of employees had been discharged for participating in a wildcat strike. Upon unsuccessful resolution of their grievances, the employees filed a section 301 action in which they accused the union of bad faith with respect to processing and participating in the adjudication of their grievances.

■ The Fifth Circuit affirmed the district court's rejection of the bad faith argument. The Court noted that it was beyond the judiciary's province to conduct an inquiry into the possible bad faith motivation of the union.[15] Here it is similarly found that—despite an apparent motivational source of bad faith—the Local in the instant case has not made any factual issue of bad faith under the *Vaca v. Sipes* standard.

We need not tarry with respect to the *Vaca v. Sipes* "discriminatory" category. Plaintiffs have not alleged nor do the facts reveal that the Local engaged in discrimination in processing their grievances.

11. 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

12. *Id.* at 190, 87 S.Ct. at 916. *See also* Bartosic and Hartley, *Labor Relations in the Private Sector* at 223. *See also* Summers, *The Individual Employee's Rights Under the Collective Bargaining Agreement: What Constitutes Fair Representation?* 126 U.Pa.L.Review 251 (1977).

13. *See* affidavit and deposition testimony cited in Local 332 brief of March 9, 1979 at p. 26.

14. 96 LRRM 2006 (C.A.5, 1976).

15. *Id.* at 2010.

Thus, the *Vaca v. Sipes* arbitrariness category is the hook upon which the plaintiffs must hang their duty of fair representation theory. The plaintiffs must show that, under the law, the Local's failure to utilize the warning notice was "arbitrary" behavior.

Noted at the outset is the reason for the failure to utilize the lack of warning notice argument. According to union representative Roy Ashby, this argument was not used because of the industry understanding that the warning notice provision did not apply to discharges resulting from wildcat strikes.[16] That this was indeed the industry understanding is confirmed by the statements of the employees' representatives responsible for handling discharge cases.[17]

■ Against this factual background, the Court considers the recent Sixth Circuit case of *Ruzicka v. General Motors*[18], better known as *Ruzicka II*. In *Ruzicka I*[19], the Sixth Circuit had held that a grossly negligent failure to timely file a member's grievance was arbitrary behavior under *Vaca v. Sipes*. In *Ruzicka II*, however, the Sixth Circuit clearly indicated that the first *Ruzicka* decision was addressed to *flagrant* union conduct.[20] Furthermore, and of decisive importance in the instant case, the Court pointed out that where a union's conduct is carried out pursuant to past practice, the *Vaca* arbitrariness standard is not violated.[21]

■ In validating a past practice-oriented decision, the Court pointed out that such a decision does not manifest the reckless disregard that is necessary under the *Vaca* arbitrariness standard.[22] The Court agrees and acknowledges that *Ruzicka II* forecloses plaintiffs' argument that the Local's failure to utilize the warning notice theory was

a breach of the duty of fair representation. As the law now stands in the Sixth Circuit, the Local did not breach its duty of fair representation. Therefore, summary judgment is hereby granted with respect to the remaining section 301 claims against the Local.

## V  PLAINTIFFS' SECTION 301 CLAIMS AGAINST THE EMPLOYERS

Plaintiffs have alleged, in Counts II and IV of their complaint, that their section 301 action is also directed against the violations of the collective bargaining agreement committed by the employers. According to plaintiffs, the employers violated the agreement by not extending the Article 40 warnings and by discharging the plaintiffs without just cause.

■ These claims must also be rejected. It is fundamental labor law that a section 301 claim against an employer must first succeed as a duty of fair representation claim against the union.[23] The Court has granted summary judgment on the analogous claims against the union. Therefore, the Court also GRANTS summary judgment with respect to all of plaintiffs' claims against the employers.

## VI  PROPRIETY OF INCLUDING THE INTERNATIONAL IN THIS ACTION

This Court is well aware that an important issue was raised by the very inclusion of the International Union as a defendant in this lawsuit. Indeed, the Court recognizes that it is questionable whether the International is the exclusive bargaining representative of the plaintiffs to the ex-

---

**16.** *See* Ashby affidavit, ¶ 17, p. 11.

**17.** *See* Jermstead affidavit, ¶ 30, p. 10; Thompson affidavit ¶ 42, p. 21.

**18.** 649 F.2d 1207, 107 LRRM 2726 (C.A.6, 1981).

**19.** *Ruzicka v. General Motors*, 528 F.2d 912, 90 LRRM 2497 (C.A.6, 1975).

**20.** 107 LRRM 2726, 2729–30.

**21.** *Id.* at 2730.

**22.** *See id.*

**23.** *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *See also Bartosic* and *Hartley, supra* n.12 at 228.

tent required in a section 301 action.[24] Nevertheless, it is not necessary for the Court to address this issue in the instant case. In this opinion, the defendants have been granted summary judgment as to all the remaining claims. Therefore, even if the Court were to find that the International had been properly included as a defendant, the International would not be subject to liability. Thus, there is no reason for this Court to consider the propriety of the International's inclusion as a defendant.

## VII  SUMMARY

This Court has considered the outstanding Motions of this case and has concluded that summary judgment is granted as to all of the remaining claims of the plaintiffs against each and every remaining defendant. This case is, therefore, DISMISSED with prejudice.

IT IS SO ORDERED.

---

**24.** *See Teamsters Local 30 v. Halms Express,* 100 LRRM 2421 (C.A.3, 1979). *But see Eazor* *Express v. Teamsters,* 520 F.2d 951 (C.A.3, 1975).